ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL GENERAL DE JUSTICIA
TRIBUNAL DE APELACIONES
**PANEL ESPECIAL[1]**

| | | |
|---|---|---|
| **VÍCTOR TORRES HAU** DEMANDANTE(S)-APELANTE(S) V. **ESTADO LIBRE ASOCIADO DE PUERTO RICO Y OTROS** DEMANDADA(S)-APELADA(S) | **KLAN202500188** | *APELACIÓN* procedente del Tribunal de Primera Instancia, Sala Superior de **SAN JUAN** Caso Núm. **SJ2024CV10072 (904)** Sobre: *Mandamus* |

Panel integrado por su presidenta, la Jueza Cintrón Cintrón, la Jueza Rivera Marchand y la Juez Barresi Ramos.

*Barresi Ramos*, juez ponente

**S E N T E N C I A**

En San Juan, Puerto Rico, hoy día 30 de mayo de 2025.

Comparece ante este Tribunal de Apelaciones, el señor **VÍCTOR TORRES HAU** (señor **TORRES HAU**) mediante *Apelación Civil* incoada el 5 de marzo de 2025. En su recurso, nos solicita que revisemos la *Sentencia* dictada el 9 de enero de 2025 por el Tribunal de Primera Instancia (TPI), Sala Superior de San Juan.[2] En dicha decisión judicial, se declaró ha lugar la *Moción de Desestimación* presentada el 12 de noviembre de 2024 por el **ESTADO LIBRE ASOCIADO DE PUERTO RICO Y EL DEPARTAMENTO DE CORRECCIÓN Y REHABILITACIÓN** (**DCR**); y no ha lugar la *Demanda de Mandamus* instada el 29 de octubre de 2024 por el señor **TORRES HAU**.

Exponemos el trasfondo fáctico y procesal que acompañan a la presente controversia.

---

[1] Véase *Orden Administrativa DJ 2024-062C* de 6 de mayo de 2025 sobre designación de paneles en el Tribunal de Apelaciones.
[2] Este dictamen judicial fue notificado y archivado en autos el 9 de enero de 2025. Apéndice de la *Apelación Civil*, págs. 67- 81.

Número Identificador: SEN2025_____

## - I -

El señor **TORRES HAU** se encontraba extinguiendo una *Sentencia* en el Complejo Correccional de Bayamón hasta el 18 de octubre de 2018, cuando fue egresado del CENTRO MÉDICO CORRECCIONAL (CMC) mediante el programa de desvío conocido como *Pase Extendido por Condición de Salud* (*Pase Extendido*) contemplado por la Ley 25-1992.[3] Ello con el fin de que permaneciera en su hogar localizado en la Urbanización Santa Rosa en Bayamón, Puerto Rico.

Tiempo después, el 18 de octubre de 2022, el señor **TORRES HAU** fue reingresado al CMC. El 30 de noviembre de 2022, el señor **TORRES HAU** suscribió un *Contrato entre el Participante y el Departamento de Correccion y Rehabilitación Mientras Disfrute del Privilegio de Pase Extendido por Condición de Salud, Ley Núm. 25* (*Contrato*).[4] Tras reevaluar su caso, el 1 de diciembre de 2022, fue reintegrado al programa de desvío por *Pase Extendido* y, como condición adicional a su egreso, se le colocó un grillete con monitoreo electrónico.[5]

Posteriormente, el 31 de mayo de 2024, empleados del **DEPARTAMENTO DE CORRECCIÓN Y REHABILITACIÓN** (**DCR**) se personaron en su hogar para notificarle que sería reingresado al CMC[6] Se le entregó comunicación informando que las condiciones que motivaron su excarcelación podían ser atendidas dentro de las instalaciones del **DCR**. Así, fue trasladado en ambulancia al CMC de Bayamón. Asimismo, se coordinó la reevaluación del señor **TORRES HAU** para determinar si persistían o habían cambiado las condiciones que motivaron su excarcelación bajo el programa de *Pase Extendido*.

---

[3] Conocida como la *Ley para el Egreso de Pacientes de S.I.D.A. y de Otras Enfermedades en su Etapa Terminal que Están Confinados en las Instituciones Penales o Internados en las Instituciones Juveniles de Puerto Rico*. El señor **TORRES HAU** padece de varias condiciones de salud deformantes e incapacitantes severas, como paraplejia (*"ascending bilateral paraplegia and loss of deep tendón reflexes"*) y como consecuencia ha desarrollado ulceras sacrales.

[4] Apéndice de la *Apelación Civil*, págs. 19- 22.

[5] *Íd.*, págs. 27- 29.

[6] *Íd.*, págs. 25- 26.

Tiempo después, el 30 de agosto de 2024, el señor **TORRES HAU** cursó una misiva dirigida a la señora Ana Escobar Pabón, entonces secretaria del **DEPARTAMENTO DE CORRECCIÓN Y REHABILITACIÓN** (**DCR**), requiriendo su reingreso al programa de *Pase Extendido* para continuar con su tratamiento médico y cuidado familiar en su hogar. Alegó, además, que su condición médica se había agravado desde su reingreso al CMC; no se le había garantizado un debido proceso de ley al dejar sin efecto el privilegio concedido de *Pase Extendido;* y concedió una semana para su excarcelación y ubicación en su hogar bajo las mismas condiciones antes de su reinserción.

Entonces, el 29 de octubre de 2024, el señor **TORRES HAU** entabló una *Demanda de Mandamus*.[7] El 12 de noviembre de 2024, el **DEPARTAMENTO DE CORRECCIÓN Y REHABILITACIÓN** (**DCR**) presentó una *Moción de Desestimación*.[8] Adujo que la reclamación no cumplía con los requisitos de *mandamus* dado que no existe deber ministerial alguno que se haya incumplido y el señor **TORRES HAU** tiene un remedio adecuado y eficaz. A los pocos días, el 15 de noviembre de 2024, el señor **TORRES HAU** presentó su *Réplica en Oposición a Solicitud de Desestimación*.[9] Argumentó que el **DEPARTAMENTO DE CORRECCIÓN Y REHABILITACIÓN** (**DCR**) incumplió con el procedimiento administrativo dispuesto por el Reglamento Núm. 7818-2010 sobre revocación de pase por condición de salud. Más tarde, el 3 de diciembre de 2024, el **DEPARTAMENTO DE CORRECCIÓN Y REHABILITACIÓN** (**DCR**) presentó su *Dúplica a "Réplica en Oposición a Solicitud de Desestimación"*.[10]

Ante ello, 9 de enero de 2025, el foro primario intimó la *Sentencia* apelada. En desacuerdo, el 23 de enero de 2025, el señor **TORRES HAU** presentó su *Moción de Reconsideración de la Sentencia*.[11] Reiteró su petitorio de que se le requiriera al **DEPARTAMENTO DE CORRECCIÓN Y REHABILITACIÓN**

---

[7] *Apéndice* de la Apelación Civil, págs. 1- 29.
[8] *Íd.*, págs. 30- 48.
[9] *Íd.*, págs. 49- 59.
[10] *Íd.*, págs. 60- 66.
[11] *Íd.*, págs. 82- 88.

(**DCR**) cumplir con su deber ministerial de excarcelar de inmediato al señor **TORRES HAU.** El pasado 23 de enero, se dictaminó una *Resolución Interlocutoria* declarando no ha lugar la *Moción de Reconsideración de la Sentencia*.[12]

Inconforme, el 5 de marzo de 2025, el señor **TORRES HAU** acudió ante este foro revisor intermedio mediante *Apelación Civil* señalando el(los) siguiente(s) error(es):

> Erró el Honorable Tribunal de Primera Instancia de San Juan, Sala de Asuntos Extraordinarios, al determinar que – aun cuando la parte demandante cumplió con todos los requisitos necesarios para la expedición del recurso de mandamus – dicho foro carecía de jurisdicción para otorgar el remedio solicitado. Entiéndase, emitir una orden contra la Secretaria de Corrección para que procurara la evaluación inmediata del apelante y obtuviera una certificación médica a los fines de determinar si las condiciones de salud de éste a[ú]n persisten o ya cesaron. Ello, para que la Secretaria de la agencia pueda ultimadamente decidir si revoca el beneficio de pase extendido por condición de salud u ordena la pronta excarcelación del apelante bajo las mismas condiciones existentes al 31 de mayo de 2024.

El 10 de marzo de 2025, pronunciamos una *Resolución* en la cual, entre otras cosas, concedimos un término de siete (7) días para presentar su alegato en oposición al **ESTADO LIBRE ASOCIADO DE PUERTO RICO**. El 20 de marzo de 2025, el **DEPARTAMENTO DE CORRECCIÓN Y REHABILITACIÓN** (**DCR**) presentó su *Alegato* conteniendo una petición para desestimar el recurso por falta de jurisdicción. El 21 de marzo de 2025, el señor **TORRES HAU** presentó su *Moción Urgente en Oposición a Solicitud de Desestimación*.

Evaluado concienzudamente el expediente del caso y contando con el beneficio de la comparecencia de las partes, nos encontramos en posición de adjudicar. Puntualizamos las normas de derecho pertinentes a la(s) controversia(s) planteada(s).

- II -

- A - *Mandamus*

El auto de *mandamus* es un recurso extraordinario que se considera:

---

[12] *Apéndice* de la Apelación Civil, págs. 89- 90.

[A]ltamente privilegiado dictado por el Tribunal Supremo del Estado Libre Asociado, o por el Tribunal de Primera Instancia de Puerto Rico, a nombre del Estado Libre Asociado de Puerto Rico, y dirigido a alguna persona o personas naturales, a una corporación o a un tribunal judicial de inferior categoría dentro de su jurisdicción requiriéndoles para el cumplimiento de algún acto que en dicho auto se exprese y que esté dentro de sus atribuciones o deberes. Dicho auto no confiere nueva autoridad y la parte a quien obliga deberá tener la facultad de poder cumplirlo.[13]

Este recurso viabiliza la intervención judicial para que se le ordene a cierta entidad o persona que "cumpla o ejecute un acto que forma parte de sus deberes y atribuciones".[14] Su expedición no nace como cuestión de derecho, sino que "descansa en la sana discreción del foro judicial".[15] En resumidas cuentas, el propósito del *mandamus* es exigir el cumplimiento con un deber impuesto por la ley o deber ministerial; se caracteriza por ser una función *pública* que no admite desobediencia porque es imprescindible su ejecución.[16]

A raíz de ello, uno de los requisitos imperativos para la expedición de un auto de *mandamus* es que el deber imputado esté "claramente definido en la ley y que esta le exija [ejecutarlo]".[17] Es menester recalcar que el deber ministerial "no tiene que ser necesariamente expreso, pues tal supuesto reduciría la función exclusiva [de un tribunal] de interpretar la Constitución y las leyes".[18] Por esto, la exégesis judicial encarna un aspecto crucial para determinar la existencia y extensión del deber público, según el significado y propósito de la ley.[19]

La persona que "se vea afectada por el incumplimiento del deber" tiene legitimación activa para instar el recurso.[20] Empero, siempre y cuando

---

[13] Artículo 649 del Código de Enjuiciamiento Civil de Puerto Rico de 1933, 32 LPRA § 3421.
[14] *Carrasquillo Román v. Inst. Correccional*, 204 DPR 699, 713 (2020), citando a 32 LPRA § 3421 y 32 LPRA Ap. V, R. 54; *Acevedo Vilá v. Aponte Hernández*, 168 DPR 443, 454 (2006).
[15] *Íd.*, citando a *AMPR v. Srio. Educación, E.L.A.*, 178 DPR 253, 266 (2010).
[16] *Íd.*; *AMPR v. Srio. Educación E.L.A.*, *supra*, pág. 263. Esto implica que **no** son meros deberes ministeriales los que se pueden hacer cumplir mediante un *mandamus*. Véase *Acevedo Vilá v. Aponte Hernández*, *supra*, págs. 454- 455, 458.
[17] *Carrasquillo Román v. Inst. Correccional*, *supra*, págs. 713- 714. Véase R. Hernández Colón, *Derecho Procesal Civil*, 6ta ed., San Juan, Ed., LexisNexis de Puerto Rico, sec. 5803, pág. 605.
[18] *AMPR v. Srio. Educación E.L.A.*, *supra*, pág. 264.
[19] *Íd.*, págs. 264 y 266.
[20] *Íd.*, pág. 265.

le haya **cursado un requerimiento previo** al funcionario público o privado que comete la inobservancia aludida. [21] Esto implica también que el perjudicado tendrá la carga probatoria de "demostrar la existencia de un deber ministerial que no ha sido cumplido por el funcionario público contra quien se ha presentado el recurso".[22] A su vez, el funcionario de quien emana el presunto incumplimiento debe probar que la concesión del auto menoscabaría el interés público o si lo que se le ordena resulta irrealizable; no puede descansar en meras alegaciones para evidenciar el perjuicio, sino que debe colocar preponderantemente al tribunal en posición para adjudicar.[23]

El juzgador que tenga ante su consideración la solicitud de expedición de un auto de *mandamus* deberá sopesar además el efecto que su decisión tendría sobre el interés público, debiendo así realizar un balance de pesos y contrapesos en su función interpretativa.[24] Es tan neurálgico esto que se considera como "el factor más importante al evaluarse la concesión de un auto de *mandamus*".[25]

Además del impacto sobre los intereses públicos, el juez debe ponderar en su análisis si el *mandamus* constituye una intromisión indebida en las funciones gubernamentales y cerciorarse de que el acto no culmine en perjuicio o confusión de derechos de terceros.[26]

### - B - *Revisión Administrativa*

La *Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico* (LPAU) provee un cuerpo de reglas mínimas para gobernar los procesos de adjudicación y reglamentación en la administración pública.[27] Su

---

[21] *Íd.*, pág. 267; *Noriega v. Hernández Colón*, 135 DPR 406, 447-448 (1994). Algunas excepciones a esto sería cuando el requerimiento hubiese sido infructuoso o cuando el deber es uno de carácter público que no solo afecta al peticionario en particular. Véase *Noriega v. Hernández Colón, supra*, págs. 448-449.

[22] *AMPR v. Srio. Educación E.L.A.*, *supra*, pág. 269.

[23] *Íd.*, págs. 269- 270.

[24] *Íd.*, pág. 268.

[25] *Íd.*, págs. 268-269.

[26] *Díaz Saldaña v. Acevedo Vilá*, 168 DPR 359, 366 (2006).

[27] Conocida como la Ley Núm. 38 de 30 de junio de 2017, según enmendada, 3 LPRA § 9601-9713; *SLG Saldaña-Saldaña v. Junta*, 201 DPR 615, 621 (2018).

sección 4.1 instituye la *revisión judicial* por este Tribunal de Apelaciones de las determinaciones finales de las agencias.[28]

La *revisión judicial* tiene como propósito limitar la discreción de las agencias y asegurarse de que estas desempeñen sus funciones conforme a la ley.[29] El criterio rector al momento de pasar juicio sobre una decisión de un foro administrativo es la *razonabilidad* de la actuación de la agencia.[30] Nuestra evaluación de la decisión de una agencia se circunscribe, entonces, a determinar si esta actuó de forma arbitraria, ilegal o irrazonable, o si sus acciones constituyen un abuso de discreción.[31]

Empero, las decisiones de los organismos administrativos especializados gozan de una presunción de legalidad y corrección, por lo que, sus conclusiones e interpretaciones merecen gran consideración y respeto.[32] Por ello, al ejecutar nuestra función revisora, este Tribunal está obligado a considerar la especialización y experiencia de la agencia, distinguiendo entre cuestiones de interpretación estatutaria —sobre las que los tribunales son especialistas— y cuestiones propias de la discreción o pericia administrativa.[33] Ello implica que los dictámenes de los entes administrativos merecen deferencia judicial.[34]

Ahora bien, tal norma no es absoluta. Nuestro más alto foro ha instaurado que no podemos dar deferencia a las determinaciones administrativas que sean irrazonables, ilegales o contrarias a derecho.[35] Particularmente, concretó las normas básicas sobre el alcance de la *revisión judicial* al expresar:

---

[28] 3 LPRA § 9671.
[29] *Torres v. Junta Ingenieros*, 161 DPR 696, 707 (2004). Véase, además Javier A. Echevarría Vargas, *Derecho Administrativo Puertorriqueño*, Ediciones Situm (2017), págs. 304– 306.
[30] *Fonte Elizondo v. F & R Const.*, 196 DPR 353 (2016); *Otero v. Toyota*, 163 DPR 716 (2005). D. Fernández Quiñones, *Derecho Administrativo y Ley de Procedimiento Administrativo Uniforme*, 2da ed., Bogotá, Ed. Forum, 2001, pág. 543.
[31] *Pérez López v. Depto. Corrección*, 208 DPR 656, 660 (2022).
[32] *Transporte Sonnell, LLC v. Junta de Subastas*, 2024 TSPR 82; 214 DPR ____; *Torres Rivera v. Policía de PR*, 196 DPR 606, 625- 626 (2016); *García Reyes v. Cruz Auto Corp.*, 173 DPR 870, 891 (2008).
[33] *OCS v. Point Guard Ins.*, 205 DPR 1005, 1028 (2020).
[34] *DACo v. Toys "R" Us*, 191 DPR 760, 765 (2014).
[35] *Torres Rivera v. Policía de PR, supra.*

[L]os tribunales deben dar deferencia a las decisiones de una agencia administrativa, pero ésta cederá cuando: (1) la determinación administrativa no está basada en evidencia sustancial; (2) el ente administrativo erró en la aplicación o interpretación de las leyes o reglamentos que se le ha encomendado administrar; (3) el organismo administrativo actuó arbitraria, irrazonable o ilegalmente, realizando determinaciones carentes de una base racional, o (4) la actuación administrativa lesionó derechos constitucionales fundamentales. Es importante destacar que, si el tribunal no se encuentra frente a alguna de esas situaciones, aunque exista más de una interpretación razonable de los hechos procede que se valide la interpretación que realizó la agencia administrativa recurrida.

Primordialmente, el alcance de la *revisión judicial* de las determinaciones administrativas se ciñe a determinar lo siguiente: (1) si el remedio concedido por la agencia fue el apropiado; (2) si las determinaciones de hecho de la agencia están basadas en *evidencia sustancial* que obra en el expediente administrativo, y (3) si las conclusiones de derecho fueron las correctas.[36]

En cuanto a las determinaciones de hechos, estas serán sostenidas por los tribunales si están respaldadas por *evidencia sustancial* que surja del expediente administrativo considerado en su totalidad.[37] La *evidencia sustancial* es aquella relevante que una mente razonable puede aceptar como adecuada para sostener una conclusión.[38] Debido a la presunción de regularidad y corrección que cobija a las decisiones de las agencias administrativas, quien alegue ausencia de *evidencia sustancial* debe presentar prueba suficiente para derrotar dicha presunción.[39] Para ello "tiene que demostrar que existe otra prueba en el expediente que reduzca o menoscabe el valor probatorio de la evidencia impugnada, hasta el punto de que no se pueda concluir que la determinación de la agencia fue razonable de acuerdo con la totalidad de la prueba que tuvo ante su consideración".[40] De modo que no podrá basarse únicamente en simple alegaciones. A esto se le conoce como la norma de la *evidencia sustancial,* con la cual se persigue evitar sustituir el

---

[36] Sección 4.5 de la LPAU, 3 LPRA § 9675; *OEG v. Martínez Giraud,* 210 DPR 79 (2022).
[37] *Rolón Martínez v. Supte. Policía,* 201 DPR 26, 36 (2018).
[38] *Otero v. Toyota, supra,* pág. 728.
[39] *Graciani Rodríguez v. Garaje Isla Verde,* 202 DPR 117, 128 (2019).
[40] *Gutiérrez Vázquez v. Hernández y otros,* 172 DPR 232, 244 (2007).

criterio del organismo administrativo en materia especializada por el criterio del tribunal revisor.[41] Por lo tanto, aun cuando exista más de una interpretación razonable de los hechos, el tribunal debe dar deferencia a la agencia, y no sustituir su criterio por el de esta.[42]

De otro lado, las conclusiones de derecho de la agencia son revisables en todos sus aspectos, sin sujeción a norma o criterio alguno.[43] Así, debemos dar deferencia a las interpretaciones que los organismos administrativos hacen de las leyes y reglamentos que administran. Es por ello que, ante casos dudosos, donde pueda concebirse una interpretación distinta de estas leyes y reglamentos, la determinación de la agencia merece deferencia sustancial.[44]

En resumen, si la decisión recurrida es razonable y se sostiene en la *evidencia sustancial* que obra en el expediente administrativo, procede su confirmación.[45] A *contrario sensu*, los tribunales revisores podemos intervenir con la decisión recurrida cuando no está basada en *evidencia sustancial*, o cuando la actuación es arbitraria, irrazonable o ilegal, o cuando afecta derechos fundamentales así como fuera del marco de los poderes que le fueron delegados mediante su ley creadora o habilitadora.[46] Del mismo modo, el Prof. Echevarría Vargas ha apuntalado que las decisiones de las agencias gubernamentales no deben ser "revocadas o modificadas salvo que conste una actuación arbitraria, ilegal o irrazonable".[47]

### - C - *Ley Núm. 25- 1992*

Conscientes de que un internado que padece de una enfermedad terminal o incapacitante severa no representa, en general, un peligro para la sociedad, la Asamblea Legislativa aprobó la Ley Núm. 25- 1992. Esta ley tiene

---

[41] *Pacheco v. Estancias,* 160 DPR 409, 432 (2003).
[42] *Íd.*
[43] *Rebollo v. Yiyi Motors,* 161 DPR 69, 77 (2004).
[44] *Torres Santiago v. Depto. Justicia,* 181 DPR 969, 1002 (2011).
[45] *García Reyes v. Cruz Auto Corp., supra,* pág. 893.
[46] *Hernández Feliciano v. Municipio de Quebradillas,* 211 DPR 99 (2023); *Capó Cruz v. Jta. Planificación et al.,* 204 DPR 581 (2020); *JP, Plaza Santa Isabel v. Cordero Badillo,* 177 DPR 177 (2009).
[47] Echevarría Vargas, J. A., *Derecho Administrativo Puertorriqueño,* 5ta. ed. Rev., San Juan, Ed. Situm, 2023, pág. 340.

como norte humanitario fomentar la excarcelación mediante un pase extendido a aquel miembro de la población correccional que cumpla con las condiciones enunciadas y los términos impuestos en el *Contrato* de desvío.[48]

La ley impone unas condiciones específicas para que el recluso cualifique para el programa:

> **1.** Que le haya sido diagnosticado que padece la enfermedad de SIDA en su etapa terminal u otra enfermedad terminal, por un panel médico competente.
>
> **2.** En el caso de los confinados la evaluación del paciente será realizada por un panel médico designado por el Secretario de Salud de entre la Facultad Médica del Programa de Servicios de Salud al Confinado del Departamento de Salud, entre los cuales habrá un infectólogo o especialista de la enfermedad de que se trate. El panel contará con las pruebas de laboratorio que sean necesarias.
>
> **3.** En el caso del menor interno la evaluación del paciente será realizada por un panel médico designado a tales efectos por el Secretario de Salud que incluirá un infectólogo para los casos de SIDA y un especialista de las enfermedades de que se trate.
>
> **4.** Que el confinado o interno voluntariamente solicitare ser egresado; o que el panel médico creado en el inciso (2) de este Artículo, solicite tal egreso como medida profiláctica de emergencia. En el caso del confinado o interno que sea adicto a drogas narcóticas que no esté rehabilitado o del paciente no adicto que no tenga un hogar donde habitar, se observará lo establecido en el inciso (5) de este Artículo.
>
> **5.** Que los familiares genuinamente quieran hacerse cargo de él o ella y dispongan de los medios y las facilidades para hacerlo, disponiéndose, que los confinados o internos que sean adictos a drogas narcóticas que no estén rehabilitados de dicha enfermedad, serán egresados a una facilidad donde puedan ser sometidos a tratamiento contra la adicción, o donde pueda ser controlado su consumo de estupefacientes, a la vez que reciban el cuidado médico que su condición de paciente terminal requiere. Pacientes no adictos, que no tengan un hogar donde regresar, podrán ser internados en albergues u otras facilidades residenciales que acepten tenerlos debidamente atendidos.
>
> **6.** Que el confinado o interno, paciente de una enfermedad en su etapa terminal haya observado buena conducta en la institución por un lapso razonable de tiempo.
>
> **7.** Que a juicio de la Administración de Corrección o de la Administración de Instituciones Juveniles no representa un peligro para la comunidad.[49]

Del mismo modo, serían candidatos para beneficiarse de esta iniciativa aquellas personas reclusas que padecen de condiciones deformantes o incapacitantes severas.[50]

---

[48] 4 LPRA § 1604.
[49] 4 LPRA §1601.
[50] Reglamento sobre Procedimientos para Atender Casos Especiales de las Personas que Están Afectadas por el Síndrome de Inmunodeficiencia Adquirida y Otras Enfermedades

Luego de que el confinado sea evaluado por los médicos internistas de la institución carcelaria y se determine que cualificaría para el pase, se procedería a la excarcelación de la persona.

Ahora bien, es deber del paciente que se beneficie del pase cumplir con las condiciones impuestas por el Departamento de Corrección y Rehabilitación (DCR) porque, si no, se le puede revocar el privilegio. El Reglamento Núm. 7818 especifica que:

> 1. Cuando el residente incurra en violación a las normas establecidas o cese la condición que dio lugar a la otorgación del privilegio se procederá conforme al Reglamento para Procedimientos Disciplinarios para Confinados y Participantes de los Programas de Desvío y Comunitarios.
> 2. Luego de haber sido reevaluado médicamente un miembro de la población correccional y se encuentre que la prognosis de vida haya cambiado y su expectativa de vida sea mayor a cuando se le otorgó dicho privilegio.
> 3. Esta reevaluación médica podrá ser realizada por un médico privado, pero deberá ser revisad[a] por el Programa de Salud de la Administración de Corrección o Administración de Instituciones Juveniles. A tales efectos, se le solicitarán aquellos laboratorios médicos y evaluaciones que se estimen pertinentes.
> 4. El participante del Pase Extendido por Condición de Salud no podrá estar empleado, ya que la otorgación del privilegio fue a causa de tener una prognosis de vida corta.[51]

Similarmente, el Artículo XI del Reglamento Núm. 7818 plantea que, si cesa la condición que motivó la concesión del privilegio, este puede ser revocado.[52] Aun así, esto no representa una barrera para que el penado pueda participar de otros programas correccionales a los cuales cualifique.[53]

Para ser partícipe de estos programas de desvío, es necesario que el beneficiario cumpla con todas las condiciones y la normativa aplicable, según esbozadas en el *Contrato* de la iniciativa.[54] El Reglamento Núm. 9221 implanta el procedimiento para determinar si se debe revocar un privilegio: (1) el Técnico de Servicios Sociopenales del programa involucrado debe

---

Terminales y Condiciones Deformantes e Incapacitantes Severas en el Sistema Correccional de Puerto Rico, Reglamento Núm. 7818, Departamento de Corrección y Rehabilitación, 2 de marzo de 2010, pág. 3.

[51] *Íd.*, págs. 17-18.

[52] *Íd.*, pág. 18.

[53] *Íd.*

[54] Reglamento para Establecer el Procedimiento Disciplinario de la Población Correccional, Reglamento Núm. 9221, Departamento de Corrección y Rehabilitación, 8 de octubre de 2020, págs. 59-60.

realizar una investigación sobre la situación; (2) este realizará un informe sobre la situación junto con la prueba recopilada; (3) presentará una querella disciplinaria; (4) quien se encargue del caso luego del técnico determinará si los hechos son suficientes para revocar el privilegio; (5) se solicitará y tramitará el reingreso a la institución correccional del querellado; (6) se le notificará al querellado las imputaciones encontradas; y (7) un oficial examinador celebrará una vista inicial, que puede ser consolidada con una final, sobre la cual emitirá una resolución.[55]

El querellado adversamente afectado tiene derecho a solicitar reconsideración de la resolución; además, de haber sido confirmada la determinación, podrá recurrir al Tribunal de Apelaciones mediante un recurso de Revisión Judicial.[56]

- III -

En este caso, el señor TORRES HAU apuntaló que el tribunal recurrido incidió al denegar la expedición del auto de *mandamus* contra el DEPARTAMENTO DE CORRECCIÓN Y REHABILITACIÓN (DCR) a pesar de que se cumplieron con todos los requisitos necesarios para expedirlo.

Por otro lado, el DEPARTAMENTO DE CORRECCIÓN Y REHABILITACIÓN (DCR) adujo que el foro de instancia resolvió correctamente al denegar el auto de *mandamus* tras sopesar el importante factor del posible impacto al interés público de la excarcelación del señor TORRES HAU. Sostuvo, además, que aún no ha finalizado la evaluación médica del señor TORRES HAU, y ello es imprescindible para determinar sobre la continuación del pase extendido o revocación del privilegio. Por lo cual, no procedería ordenar la excarcelación toda vez que el privilegio no ha sido revocado.

Al justipreciar detenidamente la totalidad del expediente judicial, es un hecho que el señor TORRES HAU aún está bajo la custodia del DEPARTAMENTO DE CORRECCIÓN Y REHABILITACIÓN (DCR). Por tal motivo,

---

[55] *Íd.*, págs. 60- 66.
[56] *Íd.*, págs. 67- 69.

dicha agencia tiene la obligación, entre otras cosas, de constatar su condición médica con Physician HMO o su equipo médico dado que participa del programa de desvío por *Pase Extendido,* y asegurarse que reciba los cuidados salubres necesarios para sus condiciones.[57]

Es preciso señalar que no hallamos prueba o evidencia alguna que sustente que el *Pase Extendido* del señor **TORRES HAU** haya sido revocado por el **DEPARTAMENTO DE CORRECCIÓN Y REHABILITACIÓN (DCR)**. Como tampoco, que el señor **TORRES HAU** haya demostrado la existencia de un deber ministerial que no se haya cumplido por la entonces secretaria del **DEPARTAMENTO DE CORRECCIÓN Y REHABILITACIÓN (DCR)** contra quien interpuso su causa de acción. En consecuencia, como correctamente lo expresó el tribunal apelado:

> "carece de jurisdicción para expedir el recurso altamente privilegiado del mandamus...[...]...este Tribunal no puede expedir el recurso de mandamus para que el Gobierno de curso a un proceso adjudicativo en el cual el Sr. Torres tenga el debido proceso de ley, hasta tanto el Gobierno culmine con su evaluación y haga su determinación respecto al privilegio del Sr. Torres".[58]

Así pues, colegimos que, evaluado el impacto sobre los intereses públicos, el juez ponderó que la expedición del auto *mandamus* constituía una intromisión indebida en las funciones gubernamentales del **DEPARTAMENTO DE CORRECCIÓN Y REHABILITACIÓN (DCR)**.

### - IV -

Por los fundamentos antes expuestos, ***no ha lugar*** a la solicitud de desestimación presentada por el **DEPARTAMENTO DE CORRECCIÓN Y REHABILITACIÓN (DCR)**; y ***confirmamos*** la *Sentencia* decretada el 9 de enero de 2025 por el Tribunal de Primera Instancia, Sala Superior de San Juan.

**Notifíquese inmediatamente.**

---

[57] Completadas las evaluaciones médicas, el **DEPARTAMENTO DE CORRECCIÓN Y REHABILITACIÓN (DCR)** deberá notificar sus resultados al señor **TORRES HAU** así como la acción a proseguir en ánimo de evitar cualquier perjuicio.

[58] "Después de todo, toda revisión se da contra el dictamen y no sus fundamentos". *Sánchez v. Eastern Air Lines, Inc*., 114 DPR 691, 695 (1983); *Collado v. ELA,* 98 DPR 111, 114 (1969); *Rodríguez v. Serra,* 90 DPR 776, 777 (1964).

Lo acordó el Tribunal y lo certifica la Secretaría del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones